UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NANCY FAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-1262-JDT-TAB |
| | ) | |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING COMMISSIONER'S DECISION**[1]

This matter is before the court on Plaintiff Nancy Fay's Complaint to Review Decision of the Commissioner of the Social Security Administration.

**I. Background**

Plaintiff Nancy Fay was born on August 29, 1949, and at the time of the ALJ's decision was 56 years old. (R. 53.) She was first diagnosed with fibromyalgia in early 2002, which became worse following a car accident on March 26, 2003. (R. 69, 79, 307-08, 337-38.) In addition to fibromyalgia, Ms. Fay also suffers from chronic fatigue syndrome, depression, and anxiety. Her past work experience was as an inventory and shipment clerk, administrative assistant, assistant manager, officer coordinator, and

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

marketing and design specialist. (R. 79-80, 310-19.) Ms. Fay has completed some college. (R. 84, 307.) At the time of the hearing, Ms. Fay was attending school full time, although she had special accommodations from teachers. (R. 326-28, 134-35.) She expressed that she would prefer to go to school part time but must go full time in order to receive needed financial aid. (R. 326, 337-38.) Ms. Fay manages most typical daily and weekly tasks such as cooking, cleaning, and driving. However, she takes breaks and sometimes receives help from her two adult daughters and her son-in-law. (R. 86-89, 330.)

Ms. Fay applied for disability insurance benefits and supplemental security income on June 4, 2004. (R. 53.) Her initial application and reconsideration were denied. Ms. Fay had a hearing before the ALJ on November 4, 2004, at which the plaintiff, a medical expert, and a vocational expert testified. (R. 301-61.) The ALJ issued her decision on January 23, 2006, finding Ms. Fay not disabled because she was capable of sedentary and light work that was presently existing and available. (R. 13-30.) The Appeals Council denied review, making the ALJ's decision final and ripe for review. (R. 5.) Ms. Fay now appeals.

**II. Disability Determination Under the Social Security Act**

Social Security disability eligibility is determined with a five-step test. The five-step test is a sequential evaluation of the following: (1) Whether the applicant is engaged in significant gainful employment. If yes, then the applicant is not disabled. (2) Whether the severity of the applicant's impairment significantly restricts the applicant's

ability to perform basic work activities.  If there is no significant impairment, then the applicant is not disabled. (3) Whether the impairment(s) meets or equals one in the Listing of Impairments.  If so, then the applicant is conclusively deemed disabled. (4) If the applicant's impairment does not meet one in the Listing, whether the applicant's residual functioning capacity ("RFC") prevents her from performing her past relevant work.  If capable of past work, the applicant is not disabled. (5) If the RFC does not permit the applicant to perform past relevant work, then the analysis proceeds to whether the applicant can perform other work, based on her RFC as well as her age, education, and work experience.  In this final step the burden is on the Commissioner to show that a significant number of these jobs exist.  20 C.F.R. §§ 404.1505, 416.920; *see also Arnold v. Barnhart*, 473 F.3d 816, 820-21 (7th Cir. 2007).

### III.  Standard of Review

Review by the district court is very limited.  It is not an opportunity to re-weigh the evidence or to second guess the ALJ.  The ALJ's findings of fact are conclusive provided they were supported by substantial evidence and there was no error of law. 42 U.S.C. § 405(g); *see also, e.g.*, *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence exists if it is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Dixon* 270 F.3d at 1176.  The ALJ must also "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## IV. Discussion

Ms. Fay premises her appeal to this court on four arguments: First, the ALJ did not do a proper function-by-function residual functional capacity ("RFC") analysis of Ms. Fay's mental impairments; Second, the hypothetical question asked of the vocational expert did not contain all of Ms. Fay's limitations; Third, the ALJ rejected portions of the evidence from the treating and testifying physicians without reason or for reasons not supported by the evidence; and Fourth, that the Commissioner did not carry the burden to establish that Ms. Fay could do other existing jobs.  Under the sequential five-step analysis, these complaints are with steps four and five.

### A.  The RFC Assessment and the Hypothetical Question Asked of the Vocational Expert Were Erroneous for Failing to Properly Account for Ms. Fay's Mental Limitations

At step two, the ALJ found that Ms. Fay had "severe" impairments of fibromyalgia, pain and fatigue secondary to fibromyalgia, depression and generalized anxiety. (R. 22, 29.)  She also found that Ms. Fay did not meet or equal the Listing requirements (step three). (R. 23.)  The ALJ was then required to do an RFC assessment and proceed onto steps four and five.  The ALJ's RFC assessment was as follows:

> [T]he claimant retains the residual functional capacity for light work with the limitations of walking a total of 2 hours in an 8-hour workday; standing 2 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday with occasional standing (once per hour); lifting/carrying 20 pounds occasionally and 5 pounds frequently; pushing/pulling 10 pounds; climbing 1 or 2 flights of stairs a day; with no

      kneeling, crawling, or climbing of ropes, ladders, or scaffolds; no exposure to extreme cold; no exposure to heights; and no work involving production quotas.

(R. 27.) Ms. Fay contends that the ALJ erred because the RFC assessment did not take into account her mental limitations. The court agrees with Ms. Fay.

      "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b) [and] (c) . . . of 20 C.F.R. 404.1545 and 416.945." SSR 96-8p. The Regulations in 20 C.F.R. § 404.1545 explain what the RFC is and how it is determined. Subsection (b) outlines the considerations for "physical abilities" (for example, sitting, standing, walking, lifting carrying, etc.). The ALJ specifically addressed these in her RFC, and, accordingly, Ms. Fay does not challenge the physical aspects of the RFC. Subsection (c) contains the framework for "mental abilities," listing particular mental functions for consideration: "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. § 404.1545(5)(c); *see also* SSR 85-16. The ALJ's RFC fails to mention these factors, and the only RFC limitation possibly linked to mental function is the restriction on "work involving production quotas." Unfortunately, this does not suffice as a "function-by-function" mental RFC assessment.

      In addition to not doing a function-by-function analysis with the mental factors, it is not clear from the ALJ's decision which evidence supports the production quota limitation. "The RFC assessment must include a narrative discussion describing how

the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." SSR 96-8p. The record contains evidence and testimony that would be useful in discussing Ms. Fay's residual mental functions.  For instance, Dr. Salinas found that the "patient fatigues easily and is mentally incapable of dealing with any normal amount of stress that you or I would be able to handle in a regular day." (R. 198.)  Dr. Smith testified that "she probably would need to be allowed to have a little extra time to learn procedures" and that "people with fibromyalgia say they have difficulty with concentration and focus." (R. 347, 351.)  There is also evidence in the Record recognizing Ms. Fay's treatment for depression and anxiety.  The ALJ mentions some of this evidence when discussing the first steps of the sequential analysis, yet she neither refutes nor links this evidence to the RFC mental-activities factors in the later steps.  The production quota limitation simply seems to come out of nowhere.  The ALJ failed to "build an accurate and logical bridge from the evidence to [the] conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

     Making the RFC assessment deficiencies even more perplexing is that it appears from her decision that the ALJ *did* believe Ms. Fay had mental impairments limiting her work ability aside from production quota limitations.  First, she found that Ms. Fay has "'severe' impairments of . . . depression and generalized anxiety." (R. 22.)  She then determined that Ms. Fay has "moderate difficulties in maintaining concentration, persistence, and pace." (R. 23.)  Then, she states in step four, "Based upon the claimant's residual functional capacity, I must determine whether the claimant can

perform any of her past relevant work." In the same paragraph, the ALJ continues,

> I have concluded that the claimant cannot perform any of her past relevant work primarily due to the depression and anxiety she experiences, especially when placed in stressful situations. The positions . . . required skill, precision, and diplomacy in their execution. The failure to do so carried significant economic consequences for . . . her employers. In her present state of mind, it is doubtful the claimant could shoulder such responsibility.

(R. 27.) But the ALJ could not have based that determination on her RFC assessment, as she purports to have done, since the only mental limitation in the RFC involves production quotas. Nor does the ALJ cite the evidence upon which she relied to conclude that Ms. Fay cannot perform past relevant work. For the ALJ to appropriately conclude that Ms. Fay has these limitations, she needs to ground them in the evidence and include them in her RFC assessment.

Additionally, the ALJ's conclusions regarding Ms. Fay's ability to perform past relevant work and other available work appears inconsistent. As quoted above, at step four the ALJ found that, due to her "state of mind," Ms. Fay could not perform past relevant work requiring "precision." Yet the ALJ then mentions that one of Ms. Fay's acquired, transferable skills was "the performance of precision work requiring attention to detail." If precision work was too stressful in Ms. Fay's former jobs, it is not clear why that would not also be the case in other jobs. Similarly, it seems illogical to conclude, as the ALJ did, that someone who has difficulty with "stressful situations" and "precision," plus "moderate difficulties in maintaining concentration, persistence, and pace" would be suitable as a typist, where one can only presume that precision, pace, and persistence are the primary skills. Perhaps these distinctions are justified, but since the

mental RFC assessment does not reflect any of this, and the ALJ did not cite particular evidence, a reader is left to puzzle these seeming contradictions.

One likely explanation for the inconsistency between the ALJ's conclusions regarding former work and other work is that the hypothetical question posed to the vocational expert was fundamentally flawed. This is the basis for another of Ms. Fay's arguments – the hypothetical question asked of the vocational expert did not include all of Ms. Fay's limitations. "Hypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *see also Young v. Barnhart*, 362 F.3d 995, 1002-05 (7th Cir. 2004). The ALJ found at steps two and three that Ms. Fay had mental impairments. (R. 22, 23.) Then she used mental limitations at step four to conclude Ms. Fay cannot do her former work. (R. 27) The RFC assessment applied to past relevant work in step four of the sequential analysis is supposed to be the same RFC that is applied to determine other existing work at step five. 20 C.F.R. §§ 404.1560(c), 404.1520(g). Yet the vocational expert, on whose testimony the ALJ relies at step five, was not told to consider any mental limitations (aside from production quotas) in the hypothetical question about what Ms. Fay could do. (R. 358-59.) If these mental limitations precluded Ms. Fay from doing her past work, then without further explanation, they must also bear relevance to the consideration of other work. Furthermore, it is not possible in this case to say that the vocational expert took note of these limitations independently from the question, because the ALJ asked variations and limited the expert to the hypothetical as asked. (R. 354-60.) *See Young* 362 F.3d

at 1003.  Therefore, to the extent the ALJ found Ms. Fay to have mental limitations, those limitations must be included in the RFC, and the complete RFC should then form the basis for the hypothetical question.  *See generally Young* 362 F.3d at 1002-05.

The Commissioner, in his brief, contends that the ALJ converted her "paragraph B" determinations – that Ms. Fay "has no more than a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation" (R. 23.) – into her mental RFC determination that Ms. Fay could not do work involving "production quotas."  This argument fails for multiple reasons.  First, there is no indication in the ALJ's opinion that she, in fact, did that.  This post-hoc view of her analysis is not supported by the actual discussion in her opinion.  Second,

> [t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential process requires a more detailed assessment by itemizing various functions contained in the broad categories . . . .

SSR 96-8p.  Accordingly, the ALJ was required to elaborate and expand upon her "paragraph B" conclusions and discuss in detail Ms. Fay's functionality.  She did not.  Additionally, it is not apparent why those paragraph B limitations would convert into an RFC limitation specifically and solely involving production quotas.  For these reasons, the Commissioner's argument fails.

Ms. Fay argues that the ALJ had to consider the factors as outlined in POMS SI 25020.010B.  However, the Program Operations Manual System does not create legal rights.  Moreover, that specific provision is directed toward medical consultants, not ALJs.  However, the long factor list in POMS SI 252020.010B is mostly an expansion/breakdown of the factors the ALJ is required to analyze under the Regulations.  See 20 C.F.R. § 404.1545(c).  So, while not required in the literal sense, the factors listed in POMS SI 25020.010B would serve as a valuable framework to guide an ALJ through her function-by-function mental RFC analysis.

**B.  Other Arguments**

Ms. Fay presents two more arguments in her brief.  For the most part, these arguments are intertwined with the issues discussed above and should be accordingly considered on remand.  The court will briefly elaborate on those arguments individually.

In the abstract, Ms. Fay's argument that the ALJ implicitly rejected some of the opinions of physicians for incorrect reasons or no reason at all is not necessarily sufficient for reversal.  The ALJ need not respond to each individual sentence from the doctors.  *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[W]e have never required an ALJ to address every piece of evidence or testimony in the record.").  Furthermore, for the most part, the ALJ in this case does go into detail when weighing the evidence – reciting particular pieces of evidence and explicitly accepting or rejecting them in whole or in part.  However, in light of the above discussion, the ALJ could improve her decision greatly by dissecting more thoroughly some of the doctors'

opinions highlighted above and in Ms. Fay's brief. Particularly, the ALJ should articulate her acceptance or rejection of the opinions relating to Ms. Fay's nonexertional limitations. Creating an RFC complete with mental limitations and creating the "logical bridge" will necessitate dealing with this evidence.

Ms. Fay's final argument is that the Commissioner did not show that there are other jobs in significant numbers that Ms. Fay can do. Given the flawed precursors (the erroneous RFC and hypothetical) to the step-five conclusion, it is impossible to know what really should have happened at step five. Therefore, the Commissioner did not carry the burden.

Related, the court notes that the vocational expert's testimony is particularly confusing. The ALJ's questions tend to muddle the distinctions between discussing former work (step 4) and other work (step 5). This is relevant due to the problems already discussed and also because the ALJ implicitly rejected portions of the vocational expert testimony at steps four and five. This difficulty in following the vocational expert questioning and the ALJ's fragmented reliance on it exacerbates the RFC/mental limitations errors and casts additional doubt on the ALJ's conclusions at step five.

**V. Conclusion**

For the reasons stated above it appears that the ALJ's decision finding Ms. Fay not disabled was in error. The ALJ did not address the factors required by the Regulations and Social Security Rulings regarding Ms. Fay's mental impairments in the

RFC assessment.  This resulted in a flawed hypothetical question for the vocational expert.  The ALJ failed to "build an accurate and logical bridge from the evidence to [the] conclusion."

On remand, the Commissioner is instructed to specifically address the mental-activities factors in determining Ms. Fay's RFC and ground those conclusions in the evidence.  Any and all of those mental limitations must also be included in the hypothetical question(s) presented to a vocational expert.  The Commissioner should ensure that an "accurate and logical bridge" exists between the evidence and each conclusion so that Ms. Fay can readily determine upon reading the decision how and why the outcome was reached.

For the foregoing reasons, the Commissioner's decision is **REMANDED** for further consideration consistent with this entry.

ALL OF WHICH IS ENTERED this 27th day of September 2007.

                                                              John Daniel Tinder, Judge
                                                              United States District Court

Copies to:

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov

Timothy J. Vrana
tim@timvrana.com